In detinue upon a special verdict. The plaintiff’s father, Thomas Mallecote, by his will, devises to his son John, Quashey, a negro man ; to his son Thomas, the child his negro woman Betty then went with, and Tomboy, a negro man; and gives slaves to bis other children, and declares his will, that his wife should have *53 the work of his sons’ negroes, till they come of age, and if either of them die without heirs of their body, lawfully begotten, then that their part should be equally divided among the survivors; and gives negro Betty to his wife during life, and after her death to be divided, with her increase, among the children. The testator’s sons, John and Thomas, are dead, and would not be twenty-one if now living. The slaves in question are Quashey and Tomboy, specifically devised to John and Thomas, and Quashey, a boy, the child Betty went with at the making of the swill, but not bom till after the testator’s death. The plaintiff, Mary, the wife of Giles, is tire testator’s wife, named in the will (though not so found in the verdict) and the plaintiff, Mallecote, is one of the testator’s daughters. The defendant is the testator’s eldest son and heir, and heir of his brothers John and Thomas, and is more that twenty-one years old. There are but two questions in the case upon the merits. 1st. Whether the testator’s wife has a right to keep the slaves devised to John and Thonras till the time they would have been twenty-one, or whether her interest determined at their deaths? 2nd. Whether the devise to Thomas of the child Betty went with,- be good, though the child was not born till after the testator’s death ? And let these points be determined either way, there will remain a necessity to make a third question, viz. Whether the plaintiffs can join in this action ? The case as to the first point, is briefly this : a man devises slaves to his children, and wills that his wife should have the work of them till his children come of age. The children died before they came of age. The question is, whether the wife’s interest determines by their deaths, or whether she shall keep the slaves till the time the children would have been twenty-one if they had lived ? It will be granted, I presume, that the devise to the wife must be taken reddendo singula singulis, viz. that she is to have the work of the slaves till tire children respectively come of age, and that each child, as it comes of age, is entitled to the slaves given to it. Cro. Ja. 259. Aylor and Chop. And it will be further granted, I believe, that in construction, the devise must be taken as if the limitation was to the wife first, till the children come of age, and afterwards to them. Indeed, otherwise, the devise to the wife cannot be supported. Nowin devises of this sort, there is a very great difference whether theygare made for payment of debts, to maintain childrem^Ufon^wodiatorust, and where they are merely for tire benejjroilJW%lMsMSiji»t if a man devises land to his executors, till tislon comes of asel for payment of his debts, or performance of nk yflfe son, there, though tire son dies before he«lftrel"or age, the interest of die executors does not determine!but they ^drallTillld the *54 land till such time .as he would have,been of age if he had lived. Boraston’s case, 3 Co. 19. Dyer, 210. a. Cro. Eliz. 252. 1 Cha. Ca. 113. But if a man devises land to his wife till his son comes of age, and. then to his son in fee, and the devise to his wife is not expressed to be for any other particular purpose, but is purely for her own benefit, in that case if the son die before twenty-one, the wife’s interest is determined, and the land shall go to the heir of the son presently. Hill. 1713, between Mansfield and Dugard, decreed Cha. Cas. Abr. 195. 4. The reason of the difference in these two cases is plain. In strictness of law the estate determines in both cases : for if a man makes a lease, or grants land to another till his son comes of age, the lease or grant is subject to the contingency of his son’s living till diat time. If he dies before, the lease or grant determines. Boraston’s case, 19. b. agreed, per totem curiam. 6. Co. 35. b. Plow. 273. And this of necessity; for grants being taken strictly according to the words, unless the estate was to determine by the death of the son, it must continue for ever, because the son will never be of age. Now the great difference between a devise and a grant is this; that in a devise a more liberal construction is allowed, and it is not so much the form of words as the intention of the testator, that governs the construction. But yet where there is no apparent intention to the contrary, a devise, as well as a grant, must be construed according to the legal sense and operation of the words. 1 Salk. 238, Amble and Jones. And in such a case no greater interest will pass by a devise, than will pass by the like words in a grant. The resolution in Boras-ton’s case (supra) is founded upon the intention of the testator, collected from the nature and manner of the devise. The case was a devise to executors till H. B. should accomplish his full age of twenty-one years, and the mean profits to be employed by the executors towards performance of the will. It was said that it should be presumed that the testator had computed that the profits of bis estate, by the time that his son' would be of age, would pay the debts, and therefore, though the son died before, the executors should hold the land, till such time as he would have been of age, because otherwise the testator’s intention in providing for the payment of his debts must be frustrated, his debts unpaid, and his will unperformed, which are certainly very strong and cogent reasons to induce such a construction of the will. So where the devise is for any particular purpose, as the maintainance of children or the like, it may be reasonable to make such a construction. But where the devise is general, no trust to be discharged, but purely for the benefit of the devisee, there is no equitable ground or motive to induce a more ample and liberal construction, than *55 according to the legal import and operation of the words, nor any intention of the testator appearing to carry the- devise further than the words in their legal sense will carry it; and this I take to be the reason in Mansfield and Dugard’s case (supra) and opon which distinction Boraston’s case and that are reconciled. That case was thus: a man devised lands to his wife, till his son should attain his age of twenty-one years, and then to his son and his heirs. The son died at thirteen, and the wife was executrix, yet it not being devised for payment of debts, nor any creditor or want of assets appearing, the Lord Chancellor (Harcourt) held that the wife’s estate determined by die death of the son, and upon are-hearing, continued of the same opinion. I will beg leave to read Boras-ton’s case and this. Now the devise before us, is exactly die same as this last, only there the slaves are devised first to the children and then to the wife. But in construction, as 1 have already observed, the devise to the wife must be taken first. The devise in this case is generally to the wife, no debts to be paid or any other trust discharged, but merely for her benefit, and she is also made executrix. No two cases can be more parallel in all their circumstances, and I hope my Lord Chancellor’s opinion will be taken for good law; especially when the reason of the difference between a devise of this sort, and a devise for payment of debts, as Boraston’s case and the odiers above cited are, is so clearly accounted for. I shall now proceed to consider the second point, whether the devise of a negro in the mother’s belly be good, though the child is not bom till after the testator’s death. The objection, I suppose, will be, that the thing given was not in esse rerum natura, at the time of the devise, and so being no more than a possibility, is not devisable. I shall agree that possibilities which are remote are not devisable, but I take a difference between a near and a remote possibility. (Jacobs’s Dictionary tit. possibility). It was never yet questioned but that the profits of land might be devised for a time, and in this very will, the work, that is, the profits of the work of the slaves, are devised to the wife for a time. Now the profits are not in esse; they are but a possibility. So the profits that shall be made of any commerce, may be devised, and I can see no difference between a devise of this sort and the devise of a negro child that shall be born, especially when the child is actually in ventre sa mere, for then it has a sort of existence. Antiently it was murder to procure the destruction of such, and the law takes: notice of a child in ventre sa mere; for a devise to such is goods For though it be but a possibility, it must be allowed to be a very near possibility, and must happen in a short time. For my part I can see no good reason why such a devise should *56 not be good. It clashes with no rule of law that I know of, nor is attended with any inconvenience. Why then should not the testator’s will be performed ? But I would not be understood as if I contended to carry devises of this sort any further, than where the child is actually in the mother’s belly. It would he inconvenient to allow a devise of the second, third, or fourth child that shall be born, for reasons that are very obvious, though even such a devise as that is allowed by the civil law, for a man may devise quidquid ilia ancilla perperisset. 2 Dom. 159. S. 18. And it is clear from the same author, that the civil law admits of devises of things that are not in es.se, as the fruits of a term, the profits of a commerce, and the like. Now it may be worth consideration, that in England legacies are properly recoverable in fire spiritual court, where the civil law is the rule of decision, though the chancery for many years has exercised a concurrent jurisdiction with them. But -then the chancery has some regard to the determinations of the civil law in matters concerning legacies, as that noted distinction between a legacy given to one at the age of twenty one, and where the legacy is made payable at twenty one, which is allowed to be a very slender foundation in reason; but because the distinction is kept up in the civil law, the chancery observes it too, that the subject may have the same measure of justice in which court soever he sues. Cha. Cas. Abr. 295. 2. in nolis. And I humbly hope that this court will pay the same regard to the decisions of the civil law in matters concerning legacies, at least, so far as it is not inconsistent with the spirit of our law, nor attended with any inconvenience ; and then it is mighty clear that the devise of a child in ventre sa mere is good. But there, as 1 said, it will be necessary to stop, and not to suffer devises of this sort to be carried any further, because of the inconvenience that will follow. I shall now speak to the third point; whether the plaintiffs can join in this action, for this must of necessity be made a question, let the merits he determined either way; because the plaintiffs have several and distinct rights. If the merits are determined against the defendant, then the plaintiffs, Giles’ and his wife, have a right to the slaves in question, and the plaintiff, Mallecole, has no pretence of right: but if the merits are with the defendant, then the plaintiffs, Giles and his wife, have no right, but the plaintiff Mallecote, does pretend some right in that case. Upon the very state of the question, the absurdity appears in joining the plaintiffs in this action, for they cannot have both a right to recover. But if one has a right, the other has not. This is really a new kind of policy, and the first time I believe, it was ever practised; it is having two strings to the bown If they can *57 not recover by one title, they will by the other; but I doubt the consequence will be that, they will recover by neither. There is no instance in the law that I know of, where two persons having distinct and several interests, can join in an action. But it is a common exception in arrest of judgment, where two join, to object that their interests are several. As Dy. 320. a. Sty. 203. 2. Lev. 27. 3. Lev. 362. But if there was no authority, the reason of the thing speaks plain enough. Jf judgment be given for the plaintiffs, it cannot be that the plaintiffs recover; but will the court give such a judgment, when one of the plaintiffs hath no right to maintain the action. Who shall have the damages in this case? Not he I hope, that has no right to recover them. Yet if any judgment is given for the plaintiffs, they will both have an equal right to the damages. Besides, who can tell for whom the jury intended these damages? Perhaps they might have been intended for the person who has no right to maintain the action; and is there any reason, then, that the defendant'should pay? The damages here were certainly designed for Giles and his wife, but if they have no right to maintain the action, ought they to have any damages ? I need say no more in so plain a point ;■ especially as it is not so new an objection in this court, even in the case of an ejectment, where one of the lessors had no title ; upon such an objection, the court would give no judgment. It has been twice so adjudged, as I have been told, in the cases Meachen and al. v. Burwell and Dewberry, and Roberts v. Smith. But if the plaintiffs, Giles and his wife, have no right, as I hope it is clear they have not, the plaintiff Mallecote has really no right at all, or if she has, it is not such a right as will maintain an action of detinue. The action she sets up, is under the remainder limited by the testator’s will to the surviving children, in case of the death of either without heir of their body. Now this remainder I conceive, is void; being limited upon so remote a contingency, viz. a dying without issue, which may not happen in a thousand years. And no limitation of a chattel can be upon a contingency, unless the contingency is to happen within the compass of a life, or lives in being, or within a reasonable term of years, as twenty or thirty. 1 Salk. 229. But this point was settled in the case of Slaughter and Whitlock, argued last court; where slaves were devised to one, and if he died without issue, remainder over. It was adjudged the remainder was void, and‘the absolute property vested in the first devisee. So that the defendant as heir at law to his brothers, is solely entitled to the slaves in question. Or admitting this plaintiff has a right, it is no more than as a tenant in common with her other brothers; the remainder is limited to be equally divided between the survivors. *58 Now surely no lawyer will say, that one. tenant in common of a chattel, can maintain an action of detinue against another tenant in common, where there are only two, much less where there are more than two; every one of them has die same right that the other has; and by the same rule that the plaintiff, Mallecote, can maintain this action against the defendant; if she recovers, another of the surviving brothers or sisters may recover of her, and the defendant again may recover of that brother or sister, or even of the plaintiff herself; and so there would be no end of suits and controversies. This sufficiently shews the reason of the law, why one tenant in common, shall not have an action at law against the other. 1. Inst. 200. a. The remedy must be in equity; indeed, that remedy is pointed out by the act of 1727. c. 11. s. 18. This case was compromised, and so no judgment given.
Reported by Edward Barradall, Esq.